Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 6965 | **DATE** | 1/7/2004 |
| **CASE TITLE** | SIRIUS LABORATORIES, INC. vs. RISING PHARMACEUTICALS, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Motion (10-1) to dismiss is denied. Enter memorandum opinion and order.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JAN 09 2004 | |
| ✓ | Docketing to mail notices. | | date docketed | |
| | Mail AO 450 form. | | Docketing Deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in Central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DOCKETED
JAN - 9 2004

SIRIUS LABORATORIES, INC.,

    Plaintiff,

v.

RISING PHARMACEUTICALS, INC.,

    Defendant.

No. 03 C 6965
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff Sirius Laboratories, Inc. filed suit against Defendant Rising Pharmaceuticals, Inc. alleging violations of the Lanham Act, 15 U.S.C. § 1125(a), the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.*, and the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.* The statements alleged to be false are the product name "Anthralin Cream 1% USP" and its placement on the product's box, tubing, packaging inserts, price list and submission of data to First Data Bank, a trade organization. Rising moves to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6). A claim may be dismissed either because it asserts a legal theory that is not cognizable as a matter of law or because it fails to allege sufficient facts to support a cognizable legal claim. In ruling on a motion to dismiss, I must presume that all allegations contained in the Complaint are true, and resolve all doubt and inferences in favor of Sirius. *See Albright v. Oliver*, 510 U.S. 266, 267 (1994).

Factual Background

From February 2001 until late 2002, Sirius was the sole distributor of an anthralin cream 1% United States Pharmacopia (USP) prescription medicine for the treatment of psoriasis. At

some point, Rising began offering a lower-cost substitute anthralin cream product which it named and labeled "Anthralin Cream 1% USP." Sirius alleges that this product actually contains less than 1%, as defined under the governing USP standard which requires a product to contain 90.50-115.00% of the labeled strength. The USP – a not-for-profit organization funded through the contributions of pharmacy, medicine and other health care professionals, as well as academia, the federal government and consumer organizations – is entrusted by the Food and Drug Administration (FDA) with establishing standards that ensure the quality of medicines and other health care technologies. FDA regulations not only recognize and incorporate the USP standards, 21 U.S.C. § 321(j), but also look to it to define what constitutes a drug, 21 U.S.C. § 321(g)(1).

Preclusion of Lanham Act Claim by Food, Drug And Cosmetic Act

In its Lanham Act claim, Sirius alleges that Rising's product is misbranded and falsely labeled because it contains less than anthralin cream 1% USP as defined under the USP specification. Under § 43(a) of the Lanham Act, a party has a private cause of action for misrepresentation and false description of any goods, including pharmaceuticals. 15 U.S.C. § 1125(a); *Genderm Corp. v. Biozone Labs.*, No. 92 C 2533, 1992 WL 220638, at *12 (N.D. Ill. Sept. 3, 1992). One limitation exists for claims brought under the Lanham Act. "[C]ourts have held not only that a plaintiff may not seek to enforce directly the [Food, Drug and Cosmetic Act, 21 C.F.R. 146.135 *et seq.* (FDCA)] through the Lanham Act but also that a plaintiff may not maintain a Lanham Act claim if the claim requires direct application or interpretation of the FDCA or FDA regulations." *Healthpoint, Ltd. v. Ethex Corp.*, 273 F.Supp.2d 817, 837 (W.D.

2

Tex. 2001) (collecting cases). "[S]uch a claim would allow a private litigant to interfere with the FDA's own investigatory time-table and prosecutorial decision-making [and] would force the Court to rule directly 'on the legality of . . . conduct before the FDA has had a chance to do so.'" *Summit Tech., Inc. v. High-Line Med. Instruments, Co.*, 933 F.Supp. 918, 932 (C.D. Cal. 1996) ("*Summit II*") (quoting *Summit Tech., Inc. v. High-Line Med. Instruments Company, Inc.*, 922 F.Supp. 299, 306 (C.D. Cal. 1996) ("*Summit I*")). The District Court should not "determine presumptively how a federal agency will interpret and enforce its own regulations." *Summit II*, 933 F.Supp. at 932 (quoting *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 223 (3rd Cir. 1990) (citations omitted); *see Dial A Car, Inc. v. Transp., Inc.*, 82 F.3d 484, 490 (D.C. Cir. 1996) (Lanham Act cannot be used as a "back-door method" of interpreting and enforcing administrative regulations). "To do so would violate Congressional intent that the FDA have discretion to enforce the FDCA and implementing regulations." *Healthpoint*, 273 F.Supp.2d at 837 (citing *United States v. Goodman*, 486 F.2d 847, 855 (7th Cir. 1973)).

In this case, Rising argues that Sirius' Lanham Act claim should be dismissed because the issue of whether a product is adulterated or misbranded under FDA standards is an issue within the exclusive purview of the FDCA and thus not properly decided in a Lanham Act case. According to the FDCA, a drug or device is misbranded "if its labeling is false or misleading in any particular." 21 U.S.C. § 351(a). A drug is adulterated if it is represented as a drug of the name of which is recognized in an official compendium (such as the USP), and its strength differs from, or its quality or purity falls below, the standard set forth in such compendium. Such determination as to strength, quality, or purity shall be made in accordance with the tests or

methods of assay set forth in such compendium. 21 U.S.C. § 351(b). Congress has formally recognized the USP as an official compendium. 21 U.S.C. § 321(j).

Unfortunately, "[t]here is no single, bright-line test to distinguish sustainable from non-sustainable claims." *Healthpoint*, 273 F.Supp.2d at 837. Perhaps as a result, therefore, some courts have held that certain false statements are actionable under the Lanham Act "even if their truth may be generally within the purview of the FDA." *Summit II*, 933 F.Supp. at 933; *see Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1138 (4th Cir. 1993); *Summit II*, 933 F.Supp. at 933; *Grove Fresh Distribs., Inc. v. Flavor Fresh Foods, Inc.*, 720 F.Supp. 714, 716 (N.D. Ill. 1989) ("*Grove Fresh I*"); *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, No. 89 C 1113, 89 C 1117, 89 C 1118, 1989 WL 152670 (N.D. Ill. Nov. 29, 1989) ("*Grove Fresh II*"). Of course, the two most relevant cases for purposes of a case in the Northern District of Illinois such as the present one are *Grove Fresh I* and *II*.

In *Grove Fresh I*, a plaintiff alleged that because defendant's orange juice contained additives and adulterants, the representation that the product was "100% orange juice from concentrate" was false. 720 F.Supp. at 716. The district court denied the defendant's motion to dismiss the Lanham Act claim, holding that it was not an impermissible attempt to recover damages for the misbranding of food in violation of the FDCA:

> Grove Fresh relies on the FDA regulation [that defines "orange juice from concentrate"] merely to establish the standard or duty which defendants allegedly failed to meet. Nothing prohibits Grove Fresh from using the FDCA or its accompanying regulations in that fashion. . . . Grove Fresh does not base its claim solely on the FDCA or FDA regulations. Grove Fresh alleges that defendants have violated section 43(a) of the Lanham Act. Even without the FDA regulation defining "orange juice from concentrate," Grove Fresh could attempt to establish a violation of section 43(a). Grove Fresh would simply need to provide other evidence establishing the proper market definition of "orange juice from concentrate."

4

*Id.* at 716. The Court allowed plaintiff to bring a Lanham Act cause of action for affirmatively misrepresenting facts – whether the orange juice was "pure" under a commercial definition – without interpreting any FDA regulation.

Two months later, I reached roughly the same conclusion in *Grove Fresh II*. In that case, I held that "[w]here Congress has precluded private causes of action under the FDCA, [I] find it difficult to justify the use of the FDCA to establish a crucial element of a private cause of action under the Lanham Act." *Grove Fresh II*, 1989 WL 152670, at *3. Therefore, I prohibited plaintiff from arguing that defendants' products did not meet FDCA standards to establish a crucial element of its Lanham Act claim because this would have been "very substantial use of the FDCA." *Id.* To sustain its claim, the plaintiff would have to "provide other evidence establishing the proper market definition of 'orange juice from concentrate.'" *Id.*

In contrast to the *Grove Fresh* cases, consideration of Sirius' Lanham Act claim would not require me to interpret the FDCA or any of its accompanying regulations. First, Sirius is simply relying on the USP definition of 1% anthralin cream to establish the standard which Rising failed to meet. This standard is not ambiguous, nor is it subject to interpretation or the exercise of some discretion. Rising's product either meets the USP standard because it contains between 90.50% and 115.00% of the labeled strength of anthralin cream or it does not, and therefore my decision on this issue would not usurp any function otherwise delegated to the FDA. Second, the USP is a not-for-profit organization entrusted by the FDA with establishing standards that ensure the quality of medicines and other health care technologies. Although it arguably performs government functions, the USP is neither part of the government nor of the FDA specifically. And in contrast to rules and regulations promulgated directly by the FDA, the

standards established by the USP are incorporated by the FDA into its rules and regulations. In other words, the USP and its established pharmaceutical standards exist independently of both the FDA and the FDCA, and I find this to be determinative in finding that use of a USP standard is not a "direct application or interpretation of the FDCA or FDA regulations." *Healthpoint*, 273 F.Supp.2d at 837.

False Statements in "Commercial Advertising or Promotion"

"There are two bases of liability under the Lanham Act: (1) false representations concerning the origin, association or endorsement of goods or services through the wrongful use of another's distinctive mark, name, trade dress or other device (otherwise known as 'false association' or 'false endorsement') and (2) false representations in advertising concerning the qualities of goods or services ('false advertising')." *L.S. Heath & Sons, Inc. v. AT&T Info. Sys., Inc.*, 9 F.3d 561, 575 (7th Cir. 1993). In a false advertising case such as this, § 43(a)(1)(B) of the Lanham Act expressly requires a plaintiff to prove that the allegedly false claims have arisen in "commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B); *see First Health Group Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 802-03 (7th Cir. 2001); *Gordon and Breach Science Publishers S.A. v. American Inst. of Physics*, 859 F.Supp. 1521, 1532-33 (S.D.N.Y. 1994) (published surveys and press release did not constitute "commercial advertising or promotion"). "Advertising" is "the action of calling something to the attention of the public [especially] by paid announcements," and "promotion" is the "furtherance of the acceptance and sale of merchandise through advertising, publicity, or discounting." *American Needle & Novelty, Inc. v.*

*Drew Pearson Mktg., Inc.*, 820 F.Supp. 1072, 1077 (N.D. Ill. 1993) (quoting *Webster's Ninth New Collegiate Dictionary* 59, 942 (1986)).

In this case, Rising argues that Sirius' allegations that it engaged in false advertising because its labeling is incorrect is insufficient to trigger liability under subpart (1)(B) because the conduct does not constitute "commercial advertising or promotion." Rising cites to *Gillette Co. v. Norelco Consumer Prods. Co.*, 946 F.Supp. 115 (D. Mass. 1996), and *Marcyan v. Nissen Corp.*, 578 F.Supp. 485, 506-07 (N.D. Ind. 1982), in support of this proposition. However, both cases can be distinguished from the present case. In *Gillette*, the district court ruled that package inserts were not "advertising or promotion" under the Lanham Act because statements made inside the product's packaging, available to consumers only after the purchase has been made, "did not affect the choice to purchase, that choice having been made at an earlier point." 946 F.Supp. at 134. Similarly, in *Marcyan*, the allegedly false misrepresentations were contained in a user's manual provided to the purchaser of the defendant's exercise equipment together with the product. 578 F.Supp. at 507. Even though the manuals were available separately at trade shows, the court found in favor of the defendants because the purportedly false representation was never made available to the general purchasing public or in sufficient quantities to constitute an advertisement. *Id.* (manual is not advertising material). In contrast, however, Sirius alleges that according to the box, tube, package insert, and the name of the product itself, Rising has falsely represented to the consuming public that its product contains the active ingredient "Anthralin Cream 1% USP." Even if the tube and package insert do not affect the choice to purchase, the same cannot be said about the box and the product name itself. Both the name of the product and representations made on the product box may "influence a consumer in his or her choice to

7

purchase a product." *Gillette*, 946 F.Supp. at 135. Accordingly, I find that Sirius has alleged false statements made in "commercial advertising or promotion." Therefore, I will not dismiss the Lanham Act claim.

State Law Claims

The only argument that Rising advances for the dismissal of Sirius' state law claims is the argument that its Lanham Act claim must fail. The corollary to Rising's argument, of course, applies here. Because the Lanham Act claim is sustainable, Sirius' claims under the Illinois Deceptive Trade Practices Act and Consumer Fraud Act must also survive.

For the reasons above, Rising's Motion to Dismiss is DENIED.

ENTER:

James B. Zagel
United States District Judge

DATE: 7 \[Jan\] 2004