# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 6965 | DATE | 12/16/2004 |
| CASE TITLE | SIRIUS LABS vs. RISING | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Defendant's renewed motion to dismiss is denied. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | DEC 20 2004 | |
| | Notices mailed by judge's staff. | | date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

SIRIUS LABORATORIES, INC.,

   Plaintiff,

   v.

RISING PHARMACEUTICALS, INC.,

   Defendant.

No. 03 C 6965
Judge James B. Zagel

**DOCKETED**
DEC 2 0 2004

## MEMORANDUM OPINION AND ORDER

Defendant Rising Pharmaceuticals, Inc. ("Rising") moves once again to dismiss Plaintiff Sirius Laboratories, Inc.'s ("Sirius") Complaint alleging violations of the Lanham Act, 15 U.S.C. §1125 (a), the Illinois Consumer Fraud Act, 815 ILCS 505/1 et seq., and the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1 et seq. based on Rising's use of the product name "Anthralin Cream 1% USP." I outlined the background of this case in a January 2004 memorandum order; except as necessary, I will not repeat those facts here. See Sirius Labs., Inc. v. Rising Pharms., Inc., 2004 U.S. Dist. LEXIS 96 (N.D. Ill. Jan. 7, 2004). In that decision, I rejected Rising's argument that resolution of the case on its merits would require interpretation of the Food, Drug and Cosmetic Act (the FDCA) (21 C.F.R. § 301 et seq.) or its accompanying regulations. Id. at *8. I found instead that Sirius's claim could be resolved by relying on the United States Pharmacopia (USP) standard for 1% anthralin cream, an unambiguous standard not subject to interpretation or the exercise of discretion. Id. at *8-9. Given that the USP is entrusted by the Food and Drug Administration (FDA) to establish standards to ensure the quality of medicine, but is not part of the government nor the FDA specifically, I determined that

application of the USP standards would not constitute a usurpation of the FDA's role. *Id.* at *9.

*Rising's Renewed Motion to Dismiss*

Rising argues that Sirius's complaint, which on its face challenges the labeling and marketing of Rising's product, is actually a challenge to the product's stability and is a matter governed squarely by FDA regulations. The true nature of Sirius's claim is more easily understood, Rising asserts, in light of the parties' different approaches to testing Rising's product in order to determine whether the product is "1% USP." While Sirius conducted tests on samples of Rising's product acquired through normal trade channels, Rising tested samples retained by its manufacturer under conditions dictated by FDA regulations. The central argument of Rising's renewed motion is that any resolution of the case comparing tests of the product as retained in controlled conditions to tests of the product in the state in which it reaches consumers will inevitably result in an assessment of the product's stability.

As Rising notes, the FDA has promulgated a set of regulations and guidelines requiring pharmaceutical manufacturers to retain product samples in controlled conditions for specific testing at particular intervals. These stability and reserve testing requirements are set forth in 21 C.F.R. §§ 211.166 - 211.170. The regulations provide that a manufacturer shall have a "written testing program designed to assess the stability characteristics of drug products" and that "[t]he results of such stability testing shall be used in determining appropriate storage conditions and expiration dates." 21 C.F.R. §211.166. Under these regulations, a "reserve sample that is representative of each lot or batch of drug product shall be retained and stored under conditions consistent with product labeling" for testing and analysis. 21 C.F.R. §211.170 (b). The FDA has also promulgated an industry "guidance" that establishes stability testing timing "to establish the

2

stability profile of the drug product." *Guidance for Industry Q1A Stability Testing of New Drug Substances and Products*, Section 2.2.6 at http://www.fda.gov/cder/guidance/4282fnl.htm. Rising is concerned that should this case reach a trier of fact, allowing evidence based on tests of products acquired through normal trade channels rather than (or even in addition to) tests of products retained under FDA-prescribed conditions could result in a finding of liability against it, despite Rising's alleged compliance with the FDA's stability testing regime. Rising asserts that Sirius's case depends upon the application of a "parallel-track procedure under a different [non-FDA] testing regime" and that any challenge to the state of its product "when it reaches consumers" cannot be determined by relying on the USP standard without implicitly over-riding the FDA's stability regulations. *Def. Br.* at 10.

Not surprisingly, Sirius disagrees with this characterization of its claim and the renewed implication of FDA pre-emption. Sirius asserts that its claim was, and remains, that the product Rising sells to consumers is falsely labeled and marketed in violation of the Lanham Act because it does not contain the USP standard the product's label and packaging advertises. Sirius asserts that Rising's use of and/or compliance with FDA stability testing requirements is irrelevant to the issue of whether Rising's product lives up to its advertising (that it is "Anthralin Cream 1% USP") when purchased by consumers. Sirius also rejects Rising's claim that this argument is somehow new, revealed only in the course of recent discovery disputes. All along, Sirius claims, it has alleged that Rising's product does not contain the standard of anthralin cream Rising advertises on its label.[1]

---

[1] Sirius notes that in an October 9, 2003 hearing held prior to Rising's first motion to dismiss, Sirius argued that Rising's product does not satisfy the 1% USP standard at the time the product reaches consumers (*e.g.*, fails to maintain the efficacy of its active ingredient in

3

The parties' recent discovery dispute regarding the source of samples for testing does not affect my initial conclusion that this case can be resolved by applying the USP standard, and without relying on or interfering with the FDA testing regime outlined in 21 C.F.R. §§ 211.166 - 211.170. That regime governs storage conditions and the determination of expiration dates for manufactured pharmaceuticals. Sirius's claims do not concern the manner in which Rising's product is stored by its manufacturer. Nor has Sirius alleged any defects with the expiration dates of Rising's product. Sirius's claim remains one of false advertising and labeling, which Sirius apparently intends to prove by relying on (at least in part) tests of samples of Rising's product obtained through normal trade channels. I do not believe that Rising's effort to rebut this assertion by relying on tests of samples stored under conditions dictated by FDA regulations necessarily requires the interpretation, application or usurpation of FDA regulations.

I appreciate Rising's concern that the different approaches to product testing imply an inherent challenge to the product's short- or long-term stability. However, the sole focus of this case is whether, at the time Rising's product reaches consumers, the product is precisely what Rising advertises it to be: 1% USP. That Sirius will seek to prove the allegations of its complaint based on a testing regime that differs from §§ 211.166 - 211.170 does not usurp the role of the FDA. Sirius cannot and may not prove Rising's failure to comply with FDA regulations in this court; it may only seek to prove Rising's failure to comply with its label advertising a product that is 1% USP, which as I have already held, can be determined by applying the objective standard established by USP.

accordance with USP standards.) *Hr'g Tr.*, Oct. 9, 2003 at 4-5).

Rising's concern that the evidence developed by the parties will inevitably challenge the stability of its product may be valid, but the concern is premature. It is not inconceivable that the fully developed facts of this case could confirm Rising's argument and reveal the case to be a squarely pre-empted challenge to the product's stability. However I am unwilling to reach that conclusion prior to the end of discovery. Therefore, while I deny Defendant's Motion to Dismiss, I will reconsider the issue as appropriate on any forthcoming motion for summary judgment.

## *Application of the* **Vermont Pure Holding** *Decision*

Alternatively, Rising moves to dismiss Sirius's claim based on the recent decision *Vermont Pure Holding, Ltd. v. Nestle Waters North America, Inc.*, 2004 WL 2030254 (D. Mass, Sept. 9, 2004). In that case, the plaintiff filed a Lanham Act claim against the defendant alleging false and misleading statements based on the use of the term "spring water." *Id.* at *1. Because spring water is a term specifically defined by the FDA, the defendant argued that FDA regulations pre-empted federal court review of the defendant's use of the term. The defendants also argued that the plaintiff's claim was an attempt to engage in private enforcement of the FDCA. In response, the plaintiff urged the court to evaluate its claim by applying a non-FDA definition of "spring water" because the defendant's product was not spring water in any "regulatory, hydrological or plain meaning sense of the word." *Id.* at *1. Instead, the plaintiff urged the court to apply the "generally accepted scientific definition of a 'spring' from the American Geological Institute." *Id.* at *4.

The court found the plaintiff's proposed definition of spring water to be fully independent of the FDA definition of spring water, such that its application would "clearly encroach on the

FDCA and the FDA regulations and would undermine, if not usurp, FDA authority." *Id.* at *6. The court further held that "insofar as any market (or other) definition deviates from the FDA it is, as a matter of law, preempted . . . [m]oreover, insofar as a market (or other) definition is identical to the FDA definition, any Lanham Act claim based on such a definition would constitute an impermissible attempt to create a private cause of action to enforce the FDCA or FDA regulations." *Id.* at *7. Finally, the *Vermont Pure Holding* court noted that the requirements set forth in the FDCA and the regulations of the FDA are exclusive and cannot be overridden by the states. *Id.* That authority, in concert with the FDA's "*express undertaking to define* 'spring water'" prohibited the court from considering a Lanham Act claim "based on the use of that term." *Id.* (emphasis added).

As framed by Sirius's Complaint, the instant case does not require the application of definitions, whether identical to or distinguishable from FDA definitions. Sirius does not ask this court to apply any one of competing definitions of "anthralin cream." Rather, Sirius asks this court to apply a standard: 1% USP. The USP standard is set by a body "entrusted by the FDA with establishing standards that ensure the quality of medicines and other health care technologies." *Sirius*, 2004 U.S. Dist. LEXIS at *5. I have already held that the USP standard is not a "direct application or interpretation of the FDCA or FDA regulations." *Healthpoint, Ltd. v. Ethex Corp.*, 273 F. Supp. 2d 817, 837 (W.D. Tex. 2001). The facts of *Vermont Pure Holdings* are distinguishable from this case, at least as it currently stands. While informative, *Vermont Pure Holdings* does not compel the dismissal of this case.

*Procedural Concerns*

Finally, I note that Sirius's objections on procedural grounds to Rising's Motion have no bearing on this decision as I specifically granted leave for Rising to file a renewed Motion to Dismiss.

For these reasons, Defendant's Renewed Motion to Dismiss is DENIED.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: 16 Dec 2004